**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) |
| | )     Case No. 24-77-MN |
| DEBORAH EVANS MOTT, | ) |
| | )     ORAL ARGUMENT REQUESTED |
| Defendant. | ) |

## **DEBORAH EVANS MOTT'S MOTION TO DISMISS INDICTMENT**

Deborah Evans Mott, by and through undersigned counsel, and pursuant to Federal Rule of Criminal Procedure 12(b), respectfully moves this Court to dismiss the Indictment.

## **INTRODUCTION**

This prosecution is a case of government overreach into a contentious bankruptcy proceeding. Team Systems International, LLC ("TSI") is a government contractor with a history of supplying goods and services to the government, including delivering millions of liters of water to Puerto Rico on behalf of the Federal Emergency Management Agency (FEMA). As the majority owner and a managing member of TSI, Ms. Mott has made a career out of executing contracts designed to support the health, safety, and security of the American people.

After two of TSI's consultants sued TSI and received a judgment for roughly $5.2 million, TSI filed for bankruptcy in an effort to get "breathing room" so that they could continue executing on their existing government contracts. To quickly address the concerns of the creditors, TSI acted on an expedited basis by filing a Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy ("SOFA") and serving discovery that included TSI's financial records, as well as Ms. Mott sitting for a deposition with creditors' counsel. Ms. Mott answered the questions to the best of her ability.

Now, the government is seeking to punish Ms. Mott's good faith attempt to provide information to the creditors by indicting her under 18 U.S.C. § 152. But Ms. Mott did not *knowingly and fraudulently* make false statements on the SOFA or during her deposition. In fact, some of the statements that form the basis for the Indictment were actually true. Others were the result of ambiguous and vague questions. Even more, there are defects with the Indictment that also support dismissal. The Indictment should be dismissed.

## **BACKGROUND**

### I.    **FEMA Contract and Hurricane Maria Orders**

In September 2017, the FEMA awarded a Multiple Award Task Order Contract (MATOC) to TSI to provide for the delivery of bottled water during a declared disaster.[1] Roughly two weeks after FEMA awarded the MATOC to TSI, Hurricane Maria hit Puerto Rico. Shortly thereafter, FEMA issued CLIN 0002 to TSI, ordering 80 million liters of water to be delivered to Puerto Rico. TSI's members immediately jumped into action, working day and night to acquire an enormous amount of water bottles to aid Puerto Rico in the wake of the deadliest storm to hit the island.[2] TSI also worked with consultants, such as GPDEV, LLC (GPDEV) and Simons Exploration Inc. (Simons), to identify water bottle distributors and subcontractor Bering Straits Logistics Services (Bering Straits) to purchase and transport water bottles. In November 2017, FEMA modified CLIN 0002 to reduce the amount of water needed to 12.5 million liters and added CLIN 0016, which required that TSI rent its leased drop trailers used to deliver the water bottles to FEMA in Puerto Rico.

---

[1] A MATOC is an open-ended contract that does not specify the delivery or quantity being ordered by the government. Instead, the MATOC provides general terms for the agreement between the parties. When need arises, the government will then issue orders to the contractor (often called Contract Line Item Numbers or CLINs). The use of MATOCs is particularly useful for emergency response situations, as it prevents the need for the government to go through the traditional solicitation process when it needs to order goods on short notice.

[2] TSI's members are Deborah Evans Mott, Christopher Mott, John S. Maciorowski, and Steve Acosta.

In the subsequent months, the members of TSI worked tirelessly to ensure that water bottles were being purchased, trailers were being sent to ports in the continental United States, ships were transporting the bottles and trailers to Puerto Rico, the trailers were being delivered and accounted for at the Puerto Rico ports, the bottles were unloaded, the trailers were being stored at the port, and the trailers were then returned to the continental United States. While the term for CLIN 0016 was originally until January 2018, the government continued to extend the term. Due to the delay in returning the trailers that were in FEMA's possession in Puerto Rico to TSI, FEMA amended CLIN 0016 to address, at least in part, the additional burden placed on TSI. The trailers were not returned to the continental United States until 2020. As a result of the extended term, TSI had increased expenses related to the storage of the trailers to several entities, including to entities like Luis Ayala Colon Sucres, Inc. ("Ayala").

Beginning in late November 2017 through May 2020, FEMA paid TSI roughly $39 million for its execution of the various CLINs under the MATOC. A substantial portion of that money was used to pay expenses incurred by TSI in the procurement, rental, shipping, and storage of all the materials necessary under the CLINs, as well as the work done by the subcontractors. However, some of that revenue passed through to TSI members—and rightly so, as TSI's members invested substantial time and effort into executing the contract.

## II.    TSI Distributions to Members

Under TSI's Operating Agreement,[3] the profits of TSI are determined after setting aside the required reserves as determined by the TSI's Management Committee and Operating Agreement and the tax distributions each year. At the end of each year, the Management Committee then meets to determine the distribution of profits that each member will receive for that given year. Each

---

[3] Under Delaware's Limited Liability Company Act (6 Del. C. § 18-101, *et seq.*), members of an LLC are bound by the LLC's operating agreement.

member's profits are then placed in that member's capital account. While the funds that are part of that member's capital account may still be in a TSI bank account, the money is the property of that member.

TSI members spend the money in their capital accounts in one of two ways. First, the member can take a distribution in the form of a direct transfer of money from their capital account to the member's personal bank account and then spend that money however the member sees fit. Second, the member can direct that money in their capital account is transferred directly to a third party to fund a purchase. So long as the transaction is correctly recorded for accounting purposes as a distribution to a member from their capital account, it does not matter which method the member uses for their withdraws from their capital account.

### III.    Florida Litigation

For years now, TSI has been engaged in contentious litigation with GPDEV and Simons stemming from an alleged modification of the contract between the parties. GPDEV and Simons brought suit against TSI in September 2018 in the Northern District of Florida. *See GPDEV, LLC, et al. v. Team Systems Int'l, LLC*, Case No. 4:18-cv-442-RH-CAS, Dkt. 1 (N.D. Fla. Sept. 21, 2018). That litigation resulted in a jury verdict of ~$2.7 million for GPDEV and ~$2.5 million for Simons plus interest. *GPDEV v. TSI*, Dkt. 306. Shortly thereafter, TSI appealed the judgment to the U.S. Court of Appeals for the Eleventh Circuit. *GPDEV v. TSI*, Dkt. 311.

### IV.    Bankruptcy Proceeding

TSI filed its Chapter 11 bankruptcy petition on January 18, 2022. *See In re Team Systems Int'l, LLC*, Case No. 22-10066-CTG, Dkt. 1 (Bankr. D. Del. Jan. 18, 2022). In the declaration of Ms. Mott in support of the bankruptcy petition and the first day motion, she stated that TSI was filing for Chapter 11 bankruptcy because it needed "breathing room" to continue operating its business. *In re TSI*, Dkt. 3. TSI filed the Schedules of Assets and Liabilities for Non-Individuals

and the Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy ("SOFA") on an expedited basis on January 26. *In re TSI*, Dkt. 28, 29. Shortly thereafter, on February 2 and 4, TSI provided the creditors with a substantial amount of discovery, which included the bank records for seven TSI bank accounts. Ms. Mott then sat for a deposition with creditors' counsel on February 7.

### V.    Mott Deposition

To start the deposition, Ms. Mott explained to the creditor's counsel that due to recent medical treatments from her bout with COVID-19, she did have some impairment with multitasking and vocabulary recall. Nonetheless, the deposition continued and Ms. Mott answered the creditors' many questions concerning TSI's business, transactions, and more.

During the deposition, Ms. Mott explained to creditors' counsel how TSI operated with its distributions and members' capital accounts. For example, she explained that when money was transferred from a TSI bank account to Coffelt Land Title for Ms. Mott's purchase of a property in Blue Springs, Missouri, the money came from the excess funds that Ms. Mott had left in her capital account. Ms. Mott purchased the property with her own money, not TSI's money. That is why the transaction was marked at "DM" and "K-1" in the notes for the transaction.[4]

### <u>ARGUMENT</u>

### I.    Motion to Dismiss Standard

The Federal Rule of Criminal Procedure 12(b)(3) provides that a defendant may raise defenses in a motion to dismiss an indictment if the defenses are capable of determination without the trial of the general issue. In analyzing a motion to dismiss an indictment, the facts alleged in

---

[4] The "K-1" notation refers to a Schedule K-1 Tax Form. The Schedule K-1 is the report that shows the amount of the LLC's income and losses passed to each member. Marking a transaction as K-1 was Ms. Mott's way of designating the transaction as one that came out of member's capital account.

the indictment are accepted as true. *See United States v. Besmajian*, 910 F.2d 1153, 1154 (3d Cir. 1990) (citing *Boyce Motor Lines v. United States*, 342 U.S. 337, 343 n.16 (1952)).

### II.    Both Counts Are Duplicitous and Should be Dismissed.

"Duplicity is the joining in a single count of two or more distinct and separate offenses." *United States v. Fernandez*, 389 F. App'x 194, 198 (3d Cir. 2010) (quoting *United States v. Starks*, 515 F.2d 112, 116 (3d Cir. 1975)). Duplicity is more than just semantics, as there are several concerns that could arise from a duplicitous complaint: (1) avoiding doubt that a general verdict may mask a finding of guilt as to one crime but not another; (2) avoiding the risk that the jury was not unanimous as to any one of the crimes charged; (3) providing the defendant adequate notice; (4) supplying an adequate basis for sentencing; and (5) protecting against double jeopardy. *See United States v. Root*, 585 F.3d 145, 154 (3d Cir. 2009).

While duplicitous pleading is not presumptively invalid, *see Fernandez*, 389 F. App'x at 199, the circumstances and charges must be evaluated to determine if it is improperly duplicitous. When the government has alleged "one unitary scheme," the actions taken under that scheme may be charged under one count.  *See United States v. Sourlis*, 953 F. Supp. 568, 574 (D.N.J. 1996). For example, charging multiple statements as one count is permitted when a defendant has repeated the same falsehood multiple times and in several different ways. *See Fernandez*, 389 F. App'x at 199. Likewise, it is not duplicitous when alternative theories for violation of a statute are charged in one count. *See United States v. Laverick*, 348 F.2d 708, 714 (3d Cir. 1965).

On the other hand, it is duplicitous when charging multiple schemes under one count. One test courts have employed to determine if there are multiple schemes is to look at whether "identical evidence will support each of them, and if any dissimilar facts must be proved . . . ." *United States v. Holley*, 942 F.2d 916, 928 (5th Cir. 1991) (quoting *Bins v. United States*, 331 F.2d 390 (5th Cir. 1964)). Additionally, the court will also look to the language of the statute to see if

there is guidance on what constitutes a scheme under the statute. *See United States v. Hinton*, 127 F. Supp. 2d 548, 554 (D.N.J. 2000).

In *Hinton*, the indictment charged 128 transactions executed in furtherance of fraud against six separate financial institutions under one count. *Id.* at 555. In looking at the statute applicable there, 18 U.S.C. § 1344, the court reasoned that the language of the statute defines one of the elements of bank fraud as a scheme to defraud "a financial institution," not a scheme to defraud financial institutions. *Id.* Therefore, the court determined the indictment was duplicitous, in essence finding that the indictment should have brought six counts—one for the fraud against each institution.[5] *Id.*

Notably, a bill of particulars cannot cure duplicity, as a duplicitous indictment is a defective indictment. *Id.* at 556. Instead, courts have often given the government options if it determines an indictment is duplicative. In *Hinton*, the court gave the government the choice between pursuing only one of the six schemes under the sole count in the indictment or having the court dismiss the indictment. *Id.*

In the Indictment, the grand jury charged Ms. Mott with two counts of false statements in relation to a bankruptcy proceeding. Count I charges false statements under penalty of perjury under 18 U.S.C. § 152(3), while Count II charges false statements under oath under 18 U.S.C. § 152(2). First looking at the plain language of the statutes, both statutes state that the crime is making a "false oath or account" for § 152(2) and making a "false declaration, certificate, verification, or statement" for § 152(3). It does not include language that makes a series of statements criminal.

---

[5] While the court does not address it directly, this holding is consistent with the identical evidence test. Because the evidence to prove fraud against one bank will substantially differ from the evidence of fraud against another bank, it follows that the fraud should have been charged as one count per financial institution.

Furthermore, for Count I, Question 4 involves payments or transfers on debt owed to an insider within a one-year period; Question 13 involves transfers to insiders within a two-year period; Question 18 pertains to closed financial accounts; and Question 30 involves providing a insider with value during the one-year period. Each answer to these questions is charged as a sub-count of Count I. However, these questions and answers are all sufficiently different and should be evaluated on their own rather than grouped together, especially since there is no allegation of a single, unified scheme or conspiracy. These sub-counts are also not charging Ms. Mott with repeating the same falsehood multiple times, nor does the count provide alternative theories of liability in the same count. Moreover, the evidence used to prove the various transactions and bank accounts will only have limited overlap.

As to Count II, it pertains to three unrelated questions and answers: one about paying for real estate assets in Missouri, one about payment to a Delaware law firm, and one about a $2.5 million check. For the same reason as Count I, all three of these are distinct enough that they also should not be charged together. There is no overlap between the alleged underlying conduct that the statements relate to, and the evidence used to address each of these statements is wholly independent of the evidence pertaining to the other sub-counts. They certainly are not part of an apparent unitary scheme.

Therefore, to allow unrelated statements to be prosecuted together as sub-counts would prejudice Ms. Mott due to the concerns outlined above. Accordingly, the Court should provide the government the same options as outlined in *Hinton*: either the court dismisses the Indictment or the government makes an election to continue pursuing an individual sub-count for each count.

### III.     Counts I(A) and I(B) Should be Dismissed.

Count I of the Indictment charges Ms. Mott with false statements under penalty of perjury in a bankruptcy case in violation of 18 U.S.C. § 152(3). Count I(A) specifically charges Ms. Mott

with knowingly and fraudulently making a materially false statement in response to Question 4 of the SOFA. Count I(B) charges Ms. Mott with a false statement in relation to Question 13 of the SOFA.

### a. Count I(A) Does Not Meet the Strict Pleading Standard.

"[T]he Third Circuit Court of Appeals has imposed a more strict pleading standard in perjury cases by requiring that indictments alleging [perjury] must 'set forth the precise falsehood alleged and the factual basis of its falsity with sufficient clarity to permit a jury to determine its verity and to allow meaningful judicial review of the materiality of those falsehoods.'" *United States v. Trover*, No. 10-205, 2011 WL 780066, at *1 (W.D. Pa. Feb. 28, 2011) (quoting *United States v. Slawik*, 548 F.2d 75, 83 (3d Cir. 1977)). In other words, "the indictment must set out the allegedly perjurious statements and the objective truth in stark contrast so that the claim of falsity is clear to all who read the charge." *United States v. Tonelli*, 577 F.2d 194, 195 (3d Cir. 1978). These principles also apply to cases charging false statements under § 152.[6]

Part 2, Question 4 of the SOFA commands: "List payments or transfers . . . made within 1 year before filing this case on debts owed to an insider or guaranteed or cosigned by an insider or guaranteed or cosigned by an insider . . . ."

Paragraphs 23 to 25 of the Indictment list three items: (1) what the government contends is the correct calculation for transfers made by TSI in the one year before the filing of the bankruptcy petition (¶ 23); (2) what the government contends is the correct calculation for transfers made by TSI in the two years before the filing of the bankruptcy petition (¶ 24); and (3) what the government contends are the financial accounts closed by TSI in the one year before the filing of

---

[6] Importantly, case law related to perjury and other false statements may be used to analyze any charge of false statements under § 152. *See United States v. Sabbeth*, 262 F.3d 207, 217 (2d Cir. 2001) (noting that § 152 is "essentially equivalent to a perjury statute") (quoting *In re Robinson*, 506 F.2d 1184, 1189 (2d Cir. 1974)).

the bankruptcy petition (¶ 25). At no point does the Indictment allege any **payment or transfer on debt** made by TSI in the one year before the filing of the bankruptcy petition. Nor does it describe what the correct answer to Question 4 should be. Instead, the Indictment relies on conclusory language that Ms. Mott made a false statement in the answer to Question 4 without ever explaining why the answer is false. Without more, the Indictment fails to satisfy the heightened pleading standard under Third Circuit case law.

Additionally, materials and statements provided by the government to the defense outside of the Indictment have indicated the government's belief is that the answers to Questions 4 and 30 should be identical. But that cannot be so. Question 4 explicitly asks the debtor to list **payments or transfers on debts** owed to an insider. Question 30 asks about **providing an insider with value in any form**. Quite simply, the two questions ask for different things. While there may be overlap between the two answers at times, there are certainly transactions that should appear on one and not the other. Furthermore, it makes no sense why the SOFA would ask two questions that would lead to disclosure of the exact same information. It is counter-intuitive to assume redundancy and surplusage in the questions of the SOFA, especially when the questions are worded so differently. *See In re Quintus Corp.*, 353 B.R. 77, 87 (Bankr. D. Del. 2006) (noting that, in the context of interpreting a contract, "the Court should strive to avoid an interpretation where any provision is rendered meaningless or mere surplusage").

But even assuming the government's approach that it has told the defense is correct, and the answers to Questions 4 and 30 should be identical, the Indictment must nonetheless make that fact clear and not leave any guesswork for the reader. Instead, paragraph 23 only states that it is listing transfers made by TSI in the one year before TSI filed the bankruptcy case—it does not allege that the transfers were made on debts owed to insiders or guaranteed or cosigned by an

insider. On its face, there is no way for a reader to know that the Indictment is alleging that paragraph 23 is the correct answer for Question 4. Accordingly, the Indictment does not meet the required pleading standards for a false statement under § 152. For those reasons, Count I(A) should be dismissed.

### b. Count I(B) is Based on a Vague and Ambiguous Question.

"Precise questioning is imperative as a predicate for the offense of perjury." *Bronston v. United States*, 409 U.S. 352, 362 (1973). "The answer to a fundamentally ambiguous question may not, as a matter of law, form the basis for a false statement." *United States v. Sarwari*, 669 F.3d 401, 407 (4th Cir. 2012) (citing *United States v. Farmer*, 137 F.3d 1265, 1268–69 (10th Cir. 1998); *United States v. Napat*, 928 F.2d 1097, 1099 (11th Cir. 1991)). "[A] question is fundamentally ambiguous when it 'is not a phrase with a meaning about which men of ordinary intellect could agree, nor one which could be used with mutual understanding by a questioner and answerer unless it were defined at the time it were sought and offered as testimony." *United States v. Ryan*, 828 F.2d 1010, 1015 (3d Cir. 1987) (quoting *United States v. Lighte*, 782 F.2d 367, 375 (2d Cir. 1986)).

Question 13 of the SOFA requires the debtor to "[l]ist any transfers or money or other property . . . made by the debtor . . . within 2 years before the filing of this case to another person, other than property transferred in the ordinary course of business or financial affairs."

Quite simply, the phrase "ordinary course of business or financial affairs" is not a phrase that men of ordinary intellect would agree on the meaning. Looking to its use in 11 U.S.C.§ 547(c)(2), it states:

> (c) The trustee may not avoid under this section a transfer—
> (2) to the extent that such transfer was in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee, and such transfer was—
> (A) made in the ordinary course of business or financial affairs of the debtor and the transferee; or
> (B) made according to ordinary business terms

That circular definition—defining ordinary course of business or financial affairs as a transfer that was made in the ordinary course of business or financial affairs—underscores the difficulty for any ordinary man to agree upon its meaning. It takes a thorough review of the case law to truly appreciate what the term means,[7] and that is not what is required of Ms. Mott before she signed the SOFA.

Instead, Ms. Mott's apparent reading of the question was to exclude any transaction outside of those that were extraordinary. Distributions to TSI members, which happened at a regular interval, were transactions in the ordinary course of business or financial affairs to Ms. Mott. That interpretation is reasonable based on the ambiguous language of the question and how a man of ordinary intellect would interpret the question. Therefore, Count I(B) should be dismissed.

### IV.    Count II Should be Dismissed in its Entirety.

Count II of the Indictment charges Ms. Mott with false statements under oath in a bankruptcy case in violation of 18 U.S.C. § 152(2). These statements were made during Ms. Mott's deposition in the bankruptcy case.

### a.    Count II(A) should be dismissed, as Ms. Mott's statement was literally true, and the question was ambiguous.

"[A] statement that is 'literally true . . . is, by definition, not false.'" *United States v. Harra*, 985 F.3d 196, 209 (3d Cir. 2021) (quoting *United States v. Castro*, 704 F.3d 125, 139 (3d Cir. 2013)). Even evasive or unresponsive answers that are literally true do not rise to the level of a false statement. *See Bronston*, 409 U.S. at 362. In determining whether a statement is true, "judges and juries must view the statement in 'the context in which it is made.'" *Thompson v. United States*,

---

[7] Even that might not be enough. As evidenced by the copious litigation over the phrase, even trained lawyers regularly disagree on its meaning.

604 U.S. 408, 419 (2025) (Alito, J. concurring) (quoting *United States v. Briggs*, 592 U.S. 69, 72 (2020)).

In her deposition, Ms. Mott was asked: "And are you aware of the debtor paying for any real estate assets that are in your name?" Ms. Mott replied: "No, I'm not."

First, Ms. Mott's statement is literally true. The money that was used to purchase the property in Blue Springs, Missouri came from a distribution of TSI's profits that had been deposited in Ms. Mott's capital account. While the money remained in TSI's bank accounts, it was Ms. Mott's money to use as she saw fit. Ms. Mott also explained that several times during the deposition. Essentially, Ms. Mott and TSI were in a bailor-bailee relationship, as TSI retained the funds in its possession. However, in a bailor-bailee relationship, the bailor is still the rightful owner of property. Accordingly, Ms. Mott was truthful in her statement that TSI did not pay for any real estate assets in her name—it was her money that was used for those purchases.

In the alternative, the question is inherently vague and ambiguous. Specifically, men of ordinary intellect could come to different conclusions as to what constitutes "paying" in this context. If money that was in Ms. Mott's capital account but in a TSI bank account is sent to a third party to fund the purchase of something, is Ms. Mott paying for it or is TSI paying for it? No matter which answer is technically correct, Ms. Mott answered based on a reasonable interpretation of a vague and ambiguous question, for which she cannot be convicted. Accordingly, Count I(A) should be dismissed.

### b. Count II(B) and II(C)

Furthermore, statements concerning the defendant's state of mind fall short of a false statement. In *United States v. Esposito*, the defendant was prosecuted for the statement "I don't believe I have ever seen him there." 358 F. Supp. 1032, 1033 (N.D. Ill. 1973). The court determined

that the statement did not present clear and convincing evidence of perjury because it is "not a direct answer to the question and is merely a statement of defendant's state of mind." *Id.* at 1033.

Here, II(B) concerns when Ms. Mott was asked what professional services the Delaware Law Firm provided to TSI, and she answered "Well they're a Delaware law firm, so they did provide a memo on the diversity issues in the Florida case, but I don't – I don't know exactly which issues. They've provided contract review services, and I'm sure they've provided other things. I just can't remember right now." Likewise, II(C) pertains to a statement Ms. Mott made concerning who a $2.5 million check was paid to. She answered: "I'm not positive, but given it's 2019, I'm guessing it was probably Ayala." Ms. Mott then proceeded to ask follow up questions about the bates number for the document and the check number, as she sought to verify information about the check, as she was only providing her best guess in the situation.

For both these instances, Ms. Mott was testifying to her state of mind. In particular, she made clear to couch the language in terms to make clear she was just "guessing" and "can't remember right now." Accordingly, these statements were not false statements, and the counts should be dismissed.

## <u>CONCLUSION</u>

For the foregoing reasons, the Indictment should be dismissed.

Dated: February 5, 2026

Respectfully submitted,

*/s/ John S. Malik*
John S. Malik
Attorney at Law
100 East 14th St
Wilmington, DE 19801
(302) 427-2247
jmalik@malik-law.com

Jonathan Jeffress (D.C. Bar No. 479074)
Courtney R. Forrest (D.C. Bar No. 996740)
Colby L. Moore (D.C. Bar No. 90002862)
Kaiser PLLC
1099 14th St, NW
8th Floor West
Washington, DC 20005
(202) 640-2850
jjeffress@kaiserlaw.com
cforrest@kaiserlaw.com
cmoore@kaiserlaw.com

*Counsel for Deborah Evans Mott*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

UNITED STATES OF AMERICA    )
                              )
          v.                )
                              )    Case No. 24-77-MN
DEBORAH EVANS MOTT,       )
                              )
          Defendant.   )

**[PROPOSED] ORDER**

This matter is before the Court on Deborah Evans Mott's Motion to Dismiss Indictment

("Motion"). Having considered the motion, the supporting documents, and arguments of counsel,

it is hereby

ORDERED that the Motion is GRANTED. The Indictment is DISMISSED in its entirety.


_____
Maryellen Noreika
United States District Judge


Wilmington, Delaware

Date: _____

## <u>CERTIFICATE OF SERVICE</u>

I certify that on February 5, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to all counsel of record.

_/s/ John S. Malik_
John S. Malik